## Ingram Day Lumber Co. v. Louis Joh.

[64 South. 934.]

1. MASTER AND SERVANT. *Fellow servant. Incompetency. Notice of incompetency. Injuries. Negligence of fellow servant.*
   In a suit by a servant against the master for injuries alleged to have been caused by the negligence of an incompetent fellow servant, it is necessary for plaintiff to show, (a) that his fellow servant was incompetent; (b) that the master knew, or should have known, that he was incompetent; (c) that the master failed to discharge the incompetent servant; and (d) that plaintiff was injured because of the negligence of this servant.

2. SAME.
   Incompetency denotes the converse of reliability in all that is essential to make up a reasonably safe person, considering the nature of the work and the general safety of those who are required to associate with such person in the general employment.

3. SAME.
   Where the notice of incompetency given to the master by the plaintiff was only that the fellow servant was not a first-class striker, and for this reason plaintiff could not turn out his share of the work, there was nothing in this to show that the fellow servant was a man whom the master might reasonably anticipate would injure the workmen whom he was helping.

4. SAME.
   The fact that a blacksmith's helper, or striker, in cutting bolts, struck a glancing or "nudging" blow which caused the hammer to slip off the object struck and injure plaintiff, did not constitute negligence in the discharge of his duties as such an accident may occur with the most skilled and prudent workman.

APPEAL from the circuit court of Harrison county.
Hon. J. H. Nevill, Judge.

Suit by Louis Joh against the Ingram Day Lumber Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Wells, May & Sanders,* attorneys for appellant.

*Mize & Mize,* attorneys for appellee.

The record in this case is lost.

COOK, J., delivered the opinion of the court.

The right of recovery in this case depends mainly upon the proposition that appellee was injured by the negligence of an incompetent fellow servant, and that the master retained in its service the incompetent servant after notice of his incompetency. To maintain this contention it was necessary for appellee, plaintiff below, to show (a) that his fellow servant was incompetent; (b) that the master knew, or should have known, that he was incompetent; (c) that the master failed to discharge the incompetent servant; (d) that appellant was injured because of the negligence of this servant.

Appellee was a blacksmith, and one Sam Gibson was his helper, or striker. It appears that appellee, about two months before the injury, complained to Mr. Cleghorn, who, it seems, was authorized to discharge Sam. He was asked to state what he said to Mr. Cleghorn, and his reply was: "I only told him that Sam was no helper, and that if he wanted the work done he would have to give me a man; I could not work and strike, too." "How many times did you complain about him?" "Constantly; I can't say how many times; numerous times." "You say that about two months before this injury occurred you complained to Mr. Cleghorn about him?" "Yes; from the time Sam started to help me I said that Sam was not worth a continental."

We gather from the entire record that Sam was a man of more than average physical strength, not quick-witted, but a little dull of understanding. There is nothing to show that he was careless or reckless. No effort was made to prove that he had a bad reputation, which would lead to the inference that he was a menace to those work-

ing with him. Appellee was doing the ordinary work of a blacksmith—cutting bolts—and Sam was wielding the sledge. It seems that, instead of striking straight down, Sam struck a glancing or "nudging" blow, which caused the sledge to slip off the object struck and come in contact with a very important part of appellee's anatomy, inflicting serious and painful injury.

We do not think that the evidence warranted the belief that Sam was incompetent, in the sense that he was a dangerous man to those who had to work with him. "Incompetency denotes the converse of reliability in all that is essential to make up a reasonably safe person, considering the nature of the work and the general safety of those who are required to associate with such person in the general employment." Sam had been in the service of this company for some time, and, with the exception of the accident here in question, no evidence was offered to show that he was not a reasonably safe person to work with.

The notice of incompetency given to the master of appellee was only that Sam was not a first-class striker, and for this reason appellee could not turn out his share of the work. There was nothing in this to show that Sam was a man who the master might reasonably anticipate would injure the workmen whom he was helping.

Besides, we are convinced that the accident causing the injury to appellee was one of the sort that no amount of forethought or skill could eliminate. There is always some risk which a servant must assume, and it seems to us that what occurred in this case does not authorize the finding that Sam was negligent in the discharge of his duties. There was an accident, such as may occur by the act of the most skillful and prudent workman.

*Reversed and remanded.*